# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| ANGELA S. POPPE,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>    Defendant. | No. 16-CV-2084-LTS<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Angela Poppe seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DI) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Poppe argues that the administrative law judge (ALJ), Eric S. Basse, erred in determining residual functioning capacity (RFC) because he discredited some of Poppe's statements, he did not give sufficient weight to the RFC opinions of the treating psychiatric nurse practitioner and the consulting examiner, and he did not obtain additional RFC opinions. I recommend affirming the ALJ's decision.

---

[1] Commissioner Berryhill is substituted for her predecessor in accordance with Federal Rule of Civil Procedure 25(d).

# I. BACKGROUND

Poppe suffers from migraines and mental health problems, including bipolar affective disorder, anxiety disorder, mood disorder, and attention deficit hyperactivity disorder. AR 11.[2] She lives alone with her elementary-school-aged daughter. AR 42. She does not work, although she has past employment as a cook helper, telemarketer, and recreational aide. AR 31-32, 286. Her sporadic work history made her eligible for DI benefits for disability established on or before December 31, 2012. AR 9, 236; Doc. 14.

In January 2013, Poppe started seeing nurse practitioner Amber Edwards (NP Edwards) consistently for psychiatric treatment. AR 312-15. In conjunction with that treatment, she began therapy with social worker Mona Krugger, and later, in September 2014, with mental health counselor Scott Dickinson. AR 318-19, 419. For physical ailments, she sees various practitioners at a clinic, although she primarily sees nurse practitioner Janel Thompson (NP Thompson). AR 560-98.

In April 2013, Poppe filed concurrent applications for DI and SSI benefits, alleging a disability onset date of January 21, 2012. AR 9, 83-84, 95-96, 203-18. At the Commissioner's request, in August 2013, Poppe had a consultative examination with psychologist Dr. Paul Conditt, who assessed Poppe's mental RFC.[3] AR 86, 98, 526-529. He opined that she had no trouble understanding instructions but moderate to severe impairment carrying out instructions and maintaining concentration and pace. AR 528-29. He also found that she was moderately impaired in her ability to use good judgment

---

[2] "AR" refers to the administrative record below.

[3] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

and respond to workplace change and severely impaired in her ability to interact appropriately with others. AR 529. He found that she could handle funds relatively well when not manic. *Id.*

After receiving Dr. Conditt's opinion, the Commissioner denied Poppe's DI and SSI applications initially and on reconsideration. AR 83-130. As part of those reviews, state agency medical consultants Dr. David Christiansen and Dr. Myrna Tashner evaluated Poppe's mental RFC. AR 89-91, 101-03, 113-16, 125-28. They found that she suffered from no severe or marked limitations but that she was moderately limited in the following areas: maintaining concentration and pace; understanding, remembering, and carrying out detailed instructions; performing activities within a schedule; sustaining an ordinary routine without special supervision; interacting with coworkers and the general public; and responding to changes in the workplace. *Id.* They found she was not significantly limited in her ability to make simple work-related decisions; respond to criticism; or understand, remember, and carry out simple instructions. *Id.* No state agency medical consultant evaluated Poppe's physical RFC because her migraines were not considered a severe impairment. AR 86-87, 93, 98, 104-05, 111, 117, 123, 129.

Poppe requested a hearing before an ALJ. AR 155. Prior to the hearing, she obtained a reevaluation from Dr. Conditt, who revised his diagnosis[4] and his opinion of Poppe's global assessment of functioning (GAF) score, but not his RFC opinion. AR 525-529. Poppe also submitted as evidence a mental RFC opinion from NP Edwards, which Mr. Dickinson concurred in.[5] AR 403-08. NP Edwards opined that Poppe had

---

[4] Dr. Conditt's diagnosis of bipolar disorder changed from "most recent episode manic, moderate" to "most recent depressed, severe, with psychotic features," and his diagnosis for anxiety disorder changed from "social anxiety and OCD features" to only "OCD features."

[5] For simplicity's sake, I refer to this opinion throughout as belonging to NP Edwards.

3

no or mild limitations understanding, remembering, and carrying out simple and detailed instructions; maintaining attention and concentration; making simple work decisions; responding to criticism and change; interacting with the public; and getting along with coworkers. AR 406-07. NP Edwards found that Poppe had no severe limitations and that she had marked limitations in only three areas: performing activities within a schedule, sustaining an ordinary routine without special supervision, and working in coordination with others without being distracted by them. AR 406. Overall, she opined that Poppe had no restrictions in her activities of daily living or in maintaining social functioning and that she would only seldom suffer deficiencies of concentration, persistence, or pace. AR 407.

On January 23, 2015, the ALJ held a video hearing at which Poppe and a vocational expert testified. AR 24-26. The ALJ issued a written opinion following the familiar five-step process outlined in the regulations.[6] AR 9-19. The ALJ determined that Poppe suffered from several severe impairments, including migraines, bipolar affective disorder, anxiety disorder, and attention deficit hyperactivity disorder. AR 11. To evaluate whether Poppe's impairments prevented her from performing her past work or other work, the ALJ determined Poppe's RFC:

> [Poppe] has the [RFC] to perform a full range of work . . . with the following nonexertional limitations: limited to simple, routine, tasks; occasional interactions with the public and coworkers but only with small

---

[6] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

groups of people; essentially limited to performing solitary work tasks at the work site; occasional interaction with supervisors and no production rate pace; also no more than a moderate noise level; no bright lighting (typical office lighting is managed); and avoid concentrated exposure to pulmonary irritants (such as odors).

AR 13. The ALJ considered the medical opinions in the record, assigning partial weight to NP Edwards's opinion, partial weight to Dr. Conditt's opinion, and substantial weight to Dr. Tashner's and Dr. Christiansen's opinions. AR 16-17. The ALJ did not fully credit Poppe's statements. AR 14-15. The ALJ found that Poppe could not perform her past work but could do other work and therefore, that she was not disabled. AR 17-19.

Poppe appealed the ALJ's decision, and the Appeals Council denied her request for review on May 20, 2016. AR 1-3. The ALJ's decision is thus the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481 (2016). Poppe filed a timely complaint in this court, seeking judicial review of the Commissioner's decision (Doc. 3). *See* 20 C.F.R. § 422.210(c). The parties briefed the issues (Docs. 14, 16), and the Honorable Leonard T. Strand, Chief Judge of the United States District Court for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of

those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Poppe challenges only the ALJ's RFC determination, arguing that the ALJ erred in evaluating her credibility, that the ALJ should have given more weight to the RFC opinions of NP Edwards and Dr. Conditt, and that some medical evidence does not support the resulting RFC determination. Keeping the substantial-evidence standard in mind, I address each of Poppe's arguments in turn.

### *A. Credibility*

Poppe argues that the ALJ improperly discredited some of her subjective complaints. Poppe testified that a few times a week, she gets a migraine so severe that she is unable to function for at least two hours and must lie down. AR 35, 39, 45. She testified that prescription medication that she is supposed to take twice a day, regardless of any symptoms, helps prevent migraines "for the most part" but that she sometimes forgets to take it. AR 33-34, 41. She testified that she suffers from mood swings and that she sometimes feels so depressed that she does not want to get out of bed, to cook, to clean, or to shower. AR 44, 51. She also testified that she would be unable to work due to her limitations in memory, concentration, and interacting with other people. AR 53, 56.

When evaluating the credibility of a claimant's subjective complaints—including pain or nervousness—the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *accord Polaski*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167

(1986), *reinstated*,[7] 804 F.2d 456 (8th Cir. 1986). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black*, 143 F.3d at 386. The ALJ may not discredit the claimant's allegations based solely on the absence of objective medical evidence, but the ALJ may rest his credibility finding on "objective medical evidence to the contrary," *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002); or "inconsistencies in the record as a whole," *Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993). Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (quoting *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001)).

The ALJ found that Poppe's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible" for several reasons. AR 14. The ALJ noted that Poppe's daily activities suggested a greater ability to focus and function than she claimed: Poppe lives alone with her minor child and walks with her to and from school every day (indeed, Poppe testified that she is always able to get out of bed, no matter how depressed she is feeling, to walk her child to school). AR 16, 42-43, 55. She volunteers every other week at her child's school, where the kids read to her. AR 8, 476. She cooks and cleans. AR 16, 44-45. She does not drive, but that is because of an operating while intoxicated charge, not due to her impairments. AR 37, 244. She grocery shops accompanied by the person who has driven her to the store. AR

---

[7] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. *Jones v. Callahan*, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

38. During the hearing, Poppe initially suggested that she never goes to bars, but later admitted that she patronizes bars occasionally. AR 12, 53-54, 61.

The ALJ also noted inconsistencies between Poppe's statements and the treatment notes. NP Edwards observed in October 2013 that Poppe interacted well with others in group settings. AR 16, 476. NP Edwards opined that Poppe's stated difficulties working with others would not prevent her from holding a job, as long as she continued treatment. *Id.* Treatment notes also reflect that Poppe's mood, concentration, and memory are occasionally normal (likely due to medication). AR 14, 308-09, 323, 329, 336, 341-42, 437, 447, 506, 520, 523. With regard to Poppe's migraines, treatment notes reflect that once prescribed Topamax in December 2013, she no longer reported having trouble with migraines and said that the medication helped greatly. AR 15, 462, 522, 547, 550, 553, 560, 562, 565, 572, 575, 585.

The ALJ also relied on inconsistencies between the record and Poppe's testimony that she is unable to have relationships with people. AR 15-16, 48-49, 56. The ALJ pointed to evidence that Poppe had spent a good Easter with her family; that she had twice seen her father; that she had befriended the mother of one of her daughter's classmates; and that she had dated a man "for awhile [sic]," introduced him to her daughter, and considered moving in with him. AR 15-16, 439, 443, 449, 492. The ALJ also relied on evidence that Poppe had once visited a former coworker, but as Poppe points out, that encounter ended with the coworker calling the police because of Poppe's behavior. AR 16, 443. Similarly, the ALJ pointed to several of Poppe's strictly sexual relationships with men (AR 15, AR 437, 470, 488, 490), but the parties agree that this evidence is not inconsistent with Poppe's testimony (Doc. 14 at 20-21; Doc. 16 at 23). Nevertheless, substantial evidence supports the ALJ's determination that Poppe is able to have relationships with some people, which is somewhat inconsistent with her testimony. Moreover, the ALJ's RFC determination provides that Poppe must perform work tasks

alone (AR 13), so it does not seem that the ALJ fully discredited Poppe's testimony regarding her difficulties interacting with other people.

The ALJ also found that some of Poppe's limitations "may be due to lifestyle choices" (AR 15), which is an appropriate factor to consider. *See Shelton v. Chater*, 87 F.3d 992, 996 (8th Cir. 1996) (ALJ relied in part on limitations being "the result of lifestyle choices" and "not medically necessitated"); *see also Halverson v. Astrue*, 600 F.3d 922, 932-33 (8th Cir. 2010) (ALJ relied in part on claimant's "alternative motives" for limitations). In January 2013, NP Edwards opined that some of Poppe's manic symptoms may be the result of her excessive caffeine intake. AR 315. In January 2014, Poppe told NP Edwards that lack of cable television due to insufficient funds "plays a part in [her] depression." AR 458. In July 2014, Poppe admitted to NP Edwards that she sleeps all day when she has nothing else to do but sleeps less on days she has events scheduled. AR 432.

Finally, the ALJ relied on Poppe's failure to obtain mental health treatment consistently prior to January 2013 and her occasional failure to take her mental health medications. AR 14-15. Although a failure to seek treatment or to take prescribed medications may support a finding that the claimant's symptoms are not as severe as claimed, the ALJ must consider possible reasons the claimant failed to seek or follow treatment before discrediting a claimant on that basis. Social Security Ruling (SSR) 96-7P, 61 Fed. Reg. 34483, 34487 (July 2, 1996) (in effect when Poppe filed her claim and the ALJ issued his decision); SSR 16-3P, 81 Fed. Reg. 14166, 14170 (Mar. 16, 2016) (superseding SSR 96-7P); *see also Watkins v. Astrue*, 414 F. App'x 894, 898 (8th Cir. 2011) (per curiam) (Colloton, J., concurring). Here, as noted by Poppe, there is no evidence that the ALJ did so: the ALJ did not question Poppe on these issues, and the

ALJ's opinion does not address whether Poppe's lack of treatment was excused.[8] Nevertheless, any error was harmless. Other reasons support the ALJ's credibility determination such that the ALJ would not have decided credibility differently absent consideration of Poppe's lack of treatment. *See, e.g.*, *King v. Colvin*, No. 13-CV-3039-LTS, 2014 WL 1344194, at *14 (N.D. Iowa Apr. 4, 2014); *cf. Watkins*, 414 F. App'x at 896-97 (majority opinion) (remand required when ALJ "relied *primarily* on [claimant's] noncompliance with treatment recommendations" to discredit his mental health symptoms and did not address whether such failure was justified (emphasis added)).

In sum, the ALJ gave good reasons for his credibility determination, which was supported by substantial evidence. Poppe points to contrary evidence in the record, but it is not for this court to reweigh the evidence. I recommend that the ALJ's credibility determination be affirmed.

### B. Weight Given to Medical Opinions

Poppe argues that the ALJ erred in assigning only partial weight to the RFC assessments of NP Edwards and Dr. Conditt. When determining a claimant's RFC, the ALJ considers medical opinions from acceptable medical sources "together with the rest of the relevant evidence." 20 C.F.R. §§ 404.1527(a)(2), (b), 416.927(a)(2), (b); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844,

---

[8] There is some support in the record that Poppe failed to take her mental health medications due to a lack of health insurance and inability to afford medications, a dislike of side effects, and an inability to remember to take her medications.

5869, 5880 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416).[9] The ALJ must also consider opinions from other, non-acceptable medical sources that assess a claimant's ability to function in the workplace. SSR 06-03p, 71 Fed. Reg. 45593, 45594-95 (Aug. 9, 2006) (clarifying that opinions from medical sources who are not "acceptable" must be considered under the old rules); 82 Fed. Reg. at 5844-45, 5870-71, 5881 (new rules incorporate policies found in SSR 06-03p). The ALJ considers the following factors to determine the weight to assign an opinion assessing a claimant's RFC:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting 20 C.F.R. §§ 404.1527(d), 416.927(d) (2008)); *see also* 20 C.F.R. § 404.1527(c), 416.927(c) (2016); SSR 06-03p, 71 Fed. Reg. at 45595; 82 Fed. Reg. at 5869-70, 5880-81.

NP Edwards, Poppe's treating psychiatric nurse practitioner,[10] opined that most of Poppe's limitations were mild or nonexistent. AR 406-07. According to NP Edwards, Poppe would have no difficulties making simple work-related decisions. *Id*. She found

---

[9] The Social Security Administration promulgated new rules for evaluating medical evidence effective March 27, 2017. 82 Fed. Reg. at 5844. I need not decide whether the new rules apply, because for the issues here, the new and old rules are substantively the same. I therefore cite to both the old and new rules throughout this Report and Recommendation.

[10] For claims filed before March 27, 2017, a nurse practitioner is not considered an "acceptable medical source," and thus, a nurse practitioner is not a treating source whose opinion may be entitled to controlling weight. 20 C.F.R. §§ 404.1502, 404.1517, 404.1527(c), 416.902, 416.913, 416.927(c); 82 Fed. Reg. at 5873, 5880-81.

11

marked limitations in only three areas: working in coordination with others without being distracted by them, performing activities within a schedule, and sustaining an ordinary routine without special supervision. AR 406. Overall, NP Edwards found Poppe suffered from no limitations in her activities of daily living, no limitations in social functioning, and only mild limitations in concentration, persistence, and pace. AR 407. She noted that she had not yet ruled out the possibility that Poppe was malingering. AR 404.

The ALJ assigned "partial weight" to NP Edwards's RFC assessment after finding that the overall record reflects that Poppe suffers from *more* limitations than found by NP Edwards (AR 16-17), so it is surprising that Poppe is challenging the weight the ALJ gave to NP Edwards's opinion. Poppe argues that the ALJ erred in rejecting the three marked limitations found by NP Edwards. Doc. 14 at 11. But the ALJ's RFC assessment includes that Poppe may have only occasional interaction with small groups of coworkers and that she is "essentially limited to performing solitary work tasks" (AR 13), which incorporates NP Edwards's finding that Poppe has marked difficulties working in coordination with others. The ALJ also included in his RFC assessment that Poppe can have "no production rate pace" (AR 13), which is perhaps based on NP Edwards's finding of marked limitation performing activities within a schedule.

In any event, substantial evidence supports the ALJ's decision to reject limitations related to sustaining an ordinary routine without special supervision and performing activities within a schedule. The ALJ gave a "good reason" for affording NP Edwards's opinion less weight: the ALJ found her opinion internally inconsistent because NP Edwards found three marked limitations in the category of concentration, persistence, or pace but only mild limitations in that category overall (AR 16-17, 406-06). *See Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("Physician opinions that are internally inconsistent, however, are entitled to less deference than they would receive in the

absence of inconsistencies."). Poppe points to evidence in the record that supports the marked limitations found by NP Edwards, but substantial evidence supports the ALJ's decision even though the ALJ could have weighed the evidence differently. For example, the record demonstrates that Poppe was consistently able to walk her child to and from school (operating within a schedule), that NP Edwards encouraged Poppe to obtain a job, and that NP Edwards could not rule out the possibility that Poppe was feigning some of her symptoms to obtain disability benefits. AR 54-55, 404, 476.

Dr. Conditt, the consulting examiner who performed two evaluations of Poppe, opined that Poppe had no difficulty understanding instructions. AR 528. He found that Poppe had moderate to severe difficulties carrying out instructions and maintaining concentration and pace "due to impulsivity and . . . moving on to something different without completing what was started." AR 529. He found Poppe severely limited in her ability to interact appropriately with others "due to being suspicious of others and blurting out things." *Id.* He found moderate limitations in her ability to exercise workplace judgment "due to making very poor decisions when manic." *Id.* Similarly, he found she could handle funds "relatively well, but is in danger of going on spending sprees when . . . manic." *Id.*

The ALJ assigned Dr. Conditt's opinion only partial weight because it was "primarily based on [Poppe's] subjective reports," which the ALJ found not entirely credible. AR 16. Poppe does not dispute (Doc. 14 at 6-7) that Dr. Conditt relied on her subjective statements that she spent money inappropriately when manic, that she was easily distracted, that she had difficulties interacting with others, and that she had difficulties completing tasks she started. AR 527-29. And although Dr. Conditt evaluated Poppe's memory and concentration through objective testing, he also relied on her subjective statements in forming his opinion regarding Poppe's ability to concentrate, explicitly noting that it was based on Poppe's statements of being impulsive and unable

13

to finish tasks. AR 527, 529. Thus, all of the limitations found by Dr. Conditt rely, at least in part, on Poppe's subjective statements. AR 529. The ALJ appropriately discounted Dr. Conditt's opinion for this reason. *See Wildman v. Astrue*, 596 F.3d 959, 966-67 (8th Cir. 2010); *see also Kirby*, 500 F.3d at 709 (discussing opinion evidence in the context of step two of the disability determination).[11]

As a final note, the ALJ did not fail to assign weight to a second RFC opinion of Dr. Conditt, as alleged by Poppe. Doc. 14 at 7. When Dr. Conditt reexamined Poppe in December 2014, he revised his diagnosis and his opinion of Poppe's GAF score. AR 525-526, 528. He did not revise his August 2013 opinion of Poppe's RFC, however. AR 525-529. Moreover, the ALJ was aware of Dr. Conditt's December 2014 reevaluation, as the ALJ cited to Dr. Conditt's initial report incorporated into his second report when citing to Dr. Conditt's RFC opinion (as opposed to citing to the initial report alone). AR 16, 389-91, 525-29.

## C. *Some Medical Evidence*

When determining a claimant's RFC, the ALJ must consider "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The ALJ's RFC determination must be supported by at least some medical evidence from a medical professional that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)).

---

[11] The case relied on by Poppe, *Mrdalj v. Colvin*, No. C15-2009, 2015 WL 7871031, at *7 (N.D. Iowa Dec. 3, 2015), is distinguishable because in that case, the psychological consulting examiner based his RFC opinion on the multiple objective tests he administered.

Poppe argues that because the ALJ gave only partial weight to the mental RFC opinions of Dr. Conditt and NP Howe, no medical evidence supports the ALJ's mental RFC determination. Because the record contains opinion evidence from a consulting psychological examiner and a treating psychiatric source (albeit a non-acceptable treating medical source), this case is distinguishable from *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), in which the record contained no RFC opinions other than from non-examining state agency consultants. Moreover, merely because the ALJ did not fully adopt the mental limitations set forth by NP Edwards and Dr. Conditt does not require the ALJ to obtain additional opinion evidence: "[a]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (quoting *Naber*, 22 F.3d at 189).

Here, the ALJ adopted more limitations than suggested by NP Edwards, who opined that Poppe would have no to mild difficulties understanding, remembering, and carrying out detailed instructions (the ALJ's RFC assessment limited Poppe to simple, routine tasks) and interacting appropriately with coworkers or the public (the ALJ limited Poppe to occasional interaction with small groups of people). AR 13, 406. Like NP Edwards (and contrary to Dr. Conditt), the ALJ did not impose limitations specifically limiting Poppe's ability to maintain concentration, exercise workplace judgment, or respond to change. AR 13, 406-07, 529. And as noted earlier, the ALJ's RFC assessment limits Poppe to performing solitary work tasks, incorporating NP Edwards's finding of marked limitation working in coordination with others. AR 13, 406. The ALJ adopted the opinion of NP Edwards to the extent it was consistent with the ALJ's independent review of the medical evidence, and the ALJ's resulting mental RFC opinion is consistent with the opinion of the state agency medical consultants, who found no marked limitations after analyzing the effect of the same severe mental impairments as

found by the ALJ. AR 13, 89-91, 101-03, 114-16, 126-28. The medical evidence relied on by the ALJ is sufficient with regards to Poppe's mental RFC. *See Kamann v. Colvin*, 721 F.3d 945, 948-51 (8th Cir. 2013) (rejecting claimant's argument that the ALJ "formulated his own medical opinion" when the ALJ rejected the RFC opinion of the one-time examining psychologist and instead relied on a "thorough[] review[] [of] years of medical evidence on record" to formulate an opinion "consistent with the views of . . . the reviewing agency psychologist"); *see also Anderson*, 51 F.3d at 779-80 (holding that the ALJ's RFC determination was supported by substantial evidence when the ALJ relied on the opinions of two reviewing physicians; adopted some, but not all, of the limitations set forth by the treating physicians; and "conducted an independent analysis of the medical evidence"); *cf. Lauer*, 245 F.3d at 704-05 (rejecting the Commissioner's argument that the ALJ's RFC determination was based on the opinion of the non-examining reviewing consultant when the medical basis for the ALJ's decision was unclear and the non-examining reviewing consultant found fewer severe impairments than the ALJ).

Although it is unclear whether Poppe challenges the ALJ's failure to develop the record with regard to her physical limitations (Doc. 14 at 17-19), I will address the issue. The record contains no opinion evidence regarding the effect Poppe's migraines have on her ability to work (not even the state agency medical consultants addressed the issue, as they did not find Poppe's migraines to be severe). Thus, *Nevland* is implicated. *See* 204 F.3d at 858. Despite the absence of a physical RFC opinion, however, remand is not required as "long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Figgins v. Colvin*, No. C 13-3022-MWB, 2014 WL 1686821, at *9 (N.D. Iowa Apr. 29, 2014) (quoting *Naber*, 22 F.3d at 189). "A claimant's records need not explicitly discuss work-related limitations, as long as the records describe the claimant's 'functional limitations with sufficient generalized clarity to allow for an understanding of

how those limitations function in a work environment.'" *Id.* (quoting *Cox v. Astrue*, 495 F.3d 614, 620 n.6 (8th Cir. 2007)).

A review of the treatment notes establishes that Poppe first reported having frequent headaches in May 2013 to NP Thompson, who suggested she use over-the-counter Excedrin Migraine and ibuprofen for treatment. AR 596-98. On August 16, 2013, she reported to Dr. Conditt during her mental health consulting examination that she had migraines about twice a week. AR 528. Two weeks later, she told nurse practitioner Randy Wirtz (NP Wirtz) at the clinic that her migraines had become more severe and that Excedrin offered no relief. AR 591-92. He prescribed amitriptyline. *Id.* By the end of September, she had stopped taking amitriptyline because it made her dizzy. AR 480, 589. NP Thompson told Poppe to buy a pill cutter and to cut the amitriptyline pills in half. AR 589. On November 5, 2013, Poppe told a physician at the clinic, Dr. Courtney Bochmann, that the amitriptyline had decreased the frequency of her migraines from daily to three times a week and that the drug made her migraines less intense. AR 586. She told Dr. Bochmann that she became sensitive to light during a migraine. *Id.* Dr. Bochmann increased Poppe's dosage of amitriptyline and prescribed a medication to treat breakthrough migraines. AR 587. On December 5, 2013, during a follow-up appointment with Dr. Bochmann, Poppe indicated that the medications had not improved her symptoms and that she experienced a migraine every other day. AR 584. Dr. Bochmann stopped Poppe's use of amitriptyline and prescribed Topamax instead. AR 585. She also prescribed a new medication to treat breakthrough migraines. *Id.* Since then, Poppe's migraines have been under control. On December 16, 2013, Poppe told NP Edwards that two to three days after beginning the Topamax prescription, she had not had any migraines. AR 462. In March 2014, Poppe told NP Wirtz that her migraines "ha[d] been doing well since taking the Topamax." AR 553. In November 2014, Poppe told NP Edwards that she no longer has problems with migraines and that the medications

helped. AR 522. Other treatment notes demonstrate that after being prescribed Topamax, Poppe complained of other physical ailments, but not migraines. AR 547, 550, 560, 562, 565, 572, 578.

Although Poppe testified she sometimes forgets to take her medication and suggested she still gets migraines with some frequency, the medical evidence demonstrates that Poppe's migraines are well-controlled with the level of compliance she is able to achieve. This case is similar to *Agan v. Astrue*, 922 F. Supp. 2d 730, 744, 755-56 (N.D. Iowa 2013), in which the record lacked a physical RFC opinion from a treating or examining source and the ALJ found the claimant somewhat limited in his ability to sit, stand, and lift things. Nevertheless, the court held that remand was not required (and the ALJ did not need to obtain additional opinion evidence) because "[t]he medical evidence, including physical examination treatment notes from the treating physicians, provide sufficient support for a finding that [claimant] was able to function in the workplace." *Id*. at 756. Treatment notes reflected that the claimant had recovered well from surgery and that a physician's assistant had suggested a lifting limitation, but nothing else. *Id*. at 755. The ALJ imposed additional limitations based on the claimant's subjective complaints. *Id*. at 756. Similarly, here, the treatment notes demonstrate that since being prescribed Topamax, Poppe rarely suffers migraines. The ALJ credited some of Poppe's testimony, however, and limited her exposure to bright lighting and odors, which Poppe testified could trigger a migraine. AR 13, 35-36. As in *Agan*, I recommend holding that the ALJ did not need to obtain additional opinion evidence from an examining source.

## III. CONCLUSION

The court respectfully recommends that the district court affirm the decision of the Social Security Administration and enter judgment in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 12th day of July, 2017.

Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa