# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

ANGELA S. POPPE,

    Plaintiff,

vs.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. C16-2084-LTS

**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION**

_____

## I. INTRODUCTION

    This case is before me on a Report and Recommendation (R&R) filed by the Honorable Kelly K.E. Mahoney, United States Magistrate Judge. *See* Doc. No. 18. Judge Mahoney recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Angela S. Poppe's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (the Act). *See* 42 U.S.C. §§ 401-434; 42 U.S.C. §§ 1381-1385.

    Poppe has filed timely objections (Doc. No. 19) to the R&R. The Commissioner has not filed a response. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II. APPLICABLE STANDARDS

*A.    Judicial Review of the Commissioner's Decision*

    The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of

benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of*

3

*Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Poppe applied for DIB and SSI on April 25, 2013, alleging she became disabled on January 21, 2012, due to bipolar affective disorder, anxiety disorder, mood disorder and attention deficit hyperactivity disorder. Doc. No. 18 at 2 (citing Administrative Record (AR) at 11). After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found at step five that that there were jobs in significant numbers in the national economy that Poppe could perform based on her residual functional capacity (RFC) and, therefore, she was not disabled as defined in the Act. Poppe argues the ALJ erred in determining that she was not disabled because:

1. The ALJ improperly discredited Poppe's subjective statements

2. The ALJ did not give sufficient weight to the opinions of the treating psychiatric nurse practitioner and the consultative examiner and did not obtain additional RFC opinions.

*See* Doc. No. 16 at 1; Doc. No. 14. Judge Mahoney addressed each argument in her R&R.

With regard to Poppe's subjective complaints, Judge Mahoney explained that the ALJ provided several reasons for finding them not entirely credible. First, he found that Poppe's daily activities suggested a greater ability to focus and function than she claimed.

4

Poppe lives alone with her minor child, walks her to and from school every day, volunteers every other week at her child's school, cooks, cleans and shops for groceries. *See* Doc. No. 18 at 7 (citing AR 8, 16, 38, 42-45, 55, 476). She also occasionally goes out to bars. *Id.* at 8 (citing AR 12, 53-54, 61).

Second, he found Poppe's statements to be inconsistent with treatment notes. For instance, Poppe's nurse practitioner, Amber Edwards, stated in October 2013 that Poppe interacted well with others in group settings and that her stated difficulties working with others would not prevent her from working as long as she continued treatment. *Id.* (citing AR 16, 476). Her mood, concentration and memory are occasionally normal (likely due to medication). *Id.* (citing AR 14, 308-09, 323, 329, 336, 341-42, 437, 447, 506, 520, 523). Poppe also reported no trouble with migraines after she started to take Topamax in December 2013. *Id.* (citing AR 14, 462, 522, 547, 550, 553, 560, 562, 565, 572, 575, 585).

Third, the ALJ referenced inconsistencies between the record and Poppe's testimony that she is unable to have relationships with people. The ALJ cited evidence that Poppe had spent time with family, befriended the mother of one of her daughter's classmates and had dated a man and had considered moving in with him. *Id.* (citing AR 15-16, 48-49, 56, 439, 443, 449, 492). While some of the ALJ's other references to relationships were consistent with Poppe's subjective complaints, Judge Mahoney noted that the ALJ did not entirely discredit Poppe's alleged difficulties in this area as he included a limitation in the RFC that Poppe must perform work tasks alone. *Id.* at 8-9 (citing AR 13).

Fourth, the ALJ found that some of Poppe's limitations "may be due to lifestyle choices or situational events." *Id.* at 9 (citing AR 15). Judge Mahoney found this to be an appropriate factor supported by the record. *Id.* (citing evidence that Poppe's manic episodes may have been related to her excessive caffeine intake, that her lack of cable

5

television played a part in her depression and that Poppe would sleep all day when she did not have anything going on, but would sleep less when she had events scheduled).

Finally, the ALJ relied on Poppe's inconsistent mental health treatment prior to January 2013 and her occasional failure to take medication. Judge Mahoney found that these were not good reasons for discrediting Poppe's allegations because the ALJ did not consider whether there were other possible reasons she failed to consistently seek treatment or take medications apart from the inference that her impairments were not as severe as claimed. *Id.* at 9-10. Nonetheless, because numerous other reasons supported the ALJ's credibility determination, and the ALJ did not rely primarily on Poppe's noncompliance with medication, Judge Mahoney found the ALJ's credibility determination was supported by substantial evidence in the record as a whole.

With regard to the ALJ's evaluation of the medical opinions, Judge Mahoney first considered Poppe's arguments regarding Edwards' opinion. The ALJ gave this opinion "partial weight." AR 16. Poppe argues the ALJ erred in rejecting three marked limitations found by Edwards: (1) working in coordination with others, (2) performing activities within a schedule and (3) sustaining an ordinary routine without special supervision. Judge Mahoney noted that the ALJ included some of these limitations in the RFC. *See id.* at 13 (describing that claimant would be "essentially limited to performing solitary work tasks" and could not perform at a production rate pace). Nonetheless, she found the ALJ provided good reasons for giving this opinion less weight. First, Edwards' opinion was internally inconsistent (finding three marked limitations in the category of concentration, persistence or pace, but only mild limitations in that category overall). Second, Edwards expressed concern that Poppe may have been feigning symptoms to obtain disability benefits. *See* Doc. No. 18 at 12-13 (citing AR 16-17, 54-55, 406-07, 476). Judge Mahoney explained that while some evidence in the record may have supported some marked limitations, substantial evidence supported the ALJ's decision regarding the weight assigned to Edwards' medical opinion.

6

Judge Mahoney next considered the opinion of Paul Conditt, Psy.D., a consultative examiner who performed two evaluations of Poppe. The ALJ assigned Dr. Conditt's opinion partial weight, reasoning that it was "primarily based on [Poppe's] subjective reports," which the ALJ did not find entirely credible. Judge Mahoney noted that all of the limitations found by Dr. Conditt relied, at least in part, on Poppe's subjective statements and that this was an appropriate reason to discount Dr. Conditt's opinions regarding the extent of Poppe's limitations.

Finally, Judge Mahoney addressed Poppe's argument that the RFC was not supported by sufficient medical evidence under *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). She found that *Nevland* did not apply because the record contained opinion evidence from a consultative examiner and a treating psychiatric source. Doc. No. 18 at 15. In *Nevland*, the record contained no RFC opinions other than from non-examining state agency consultants. *Id*. Judge Mahoney also found that the ALJ was not required to obtain additional opinion evidence because the evidence in the record provided a sufficient basis for the ALJ's decision. *Id*. Specifically, Judge Mahoney noted the ALJ adopted more limitations than suggested by Edwards, but also incorporated many of Edwards' limitations into the RFC that were supported by other medical evidence in the record. Ultimately, she concluded that the ALJ's RFC was supported by sufficient medical evidence in the record regarding Poppe's physical and mental limitations. For these reasons, Judge Mahoney recommends I affirm the ALJ's decision.

## IV.   DISCUSSION

### A.   *Poppe's Objections*

Poppe objects to Judge Mahoney's analysis of all of the issues discussed above. As such, I will review these issues de novo. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).

B.  *Analysis*

1.  *Poppe's Subjective Allegations*

Poppe relies on her original arguments regarding why the ALJ erred in discrediting her subjective allegations. She argues that her daily activities are consistent with a claim of disability and that the ALJ erred in rejecting her allegations based on her failure to regularly take her medication. *See* Doc. No. 14 at 20-23. The ALJ discredited Poppe's allegations because her daily activities suggested a greater ability to focus and function than she claimed, her allegations were inconsistent with treatment notes, some of her limitations appeared to be related to factors other than her impairments, Poppe failed to maintain consistent mental health treatment prior to January 2013 and was occasionally non-compliant with her medications. Judge Mahoney concluded that all of the ALJ's reasons except the last two (regarding inconsistent treatment and non-compliance with medication) were supported by substantial evidence in the record as a whole. While Poppe has pointed to some evidence in the record that would support an opposite conclusion, it is not substantial evidence that would undermine the ALJ's decision.

After reviewing Poppe's arguments and the record as a whole, I agree with Judge Mahoney's analysis. Specifically, I agree that Poppe's failure to maintain consistent treatment or regularly take her medications are not good reasons to discredit her subjective allegations without considering other possible reasons for those occurrences. The ALJ's other reasons for discrediting Poppe allegations, however, are supported by substantial evidence in the record as a whole. While the record shows that Poppe has difficulties with relationships, it does not show that she is incapable of maintaining relationships as she suggested. The ALJ took the evidence that Poppe cites into account by providing an RFC that includes only occasional interactions with the public, coworkers and supervisors, in only small groups of people, and limiting her to solitary work tasks at the work site. *See* AR 13. The ALJ did not entirely discredit Poppe's allegations

8

regarding social interaction, only the extent to which she alleged them. Substantial evidence in the record as a whole supports the ALJ's credibility determination.

### 2. *The Opinion of Edwards and Dickinson*

Poppe relies on her original arguments regarding why the ALJ erred in discounting the opinion of Nurse Practitioner Edwards and Scott Dickinson, LMHC, Poppe's therapist.[1] She argues that the record supports marked limitations as opined by Edwards and Dickinson. *See* Doc. No. 14 at 10-17. The ALJ found Edwards' opinion internally inconsistent because she opined that Poppe had marked limitations in three areas of sustaining concentration and persistence, but overall, found she only had mild functional limitations in that area. *Id*. at 16-17. The ALJ also found Edwards' opinion that Poppe had no restrictions in daily activities and social functioning to be inconsistent with the record, which supported some limitations. *Id*. Therefore, he gave Edwards' opinion "partial weight." *Id*. After reviewing Poppe's arguments and the record as a whole, I agree with Judge Mahoney that the ALJ provided good reasons supported by substantial evidence in the record as a whole for giving Edwards' opinion only "partial weight." *See* Doc. No. 18 at 11-13.

### 3. *Dr. Conditt's Opinions*

Poppe argues it was improper for the ALJ to discount Dr. Conditt's opinions on grounds that they were primarily based on Poppe's subjective complaints. Dr. Conditt met with Poppe on August 16, 2013, and December 11, 2014. AR 389-92; 525-28.[2]

---

[1] Dickinson concurred with Edwards' opinion. *See* AR 408. I will refer to it as Edwards' opinion.

[2] As Judge Mahoney explained, Dr. Conditt reexamined Poppe in December 2014 and revised his diagnosis and opinion of Poppe's GAF score, but did not revise his August 2013 opinion of Poppe's limitations.

9

The beginning of his report notes that it is "based upon test results and other available information and it is based upon inferences, psychometric probabilities, and the typical limited time affordable to gather data and information." AR 389. He states that "[o]ther pertinent information should be used in making decisions regarding the claimant." *Id.* Dr. Conditt frequently references Poppe's subjective complaints throughout his report. His final prognosis states:

> Guarded. Angie said that when she is manic, she is "wild and I'm embarrassed to be in public." She has a lot of trouble working with others, especially if there is any hint that someone may be judging her. She reported having problems on jobs even when she was on medication.
>
> 1. As far as ability to understand instruction, procedures and locations, no impairment.
>
> 2. As far as ability to carry out instructions, maintain concentration and pace, moderate to severe impairment due to impulsivity and always starting things and then moving on to something different without completing what was started.
>
> 3. As far as ability to interact appropriately with supervisors, co-workers, and the public, severe impairment due to being suspicious of others and blurting out things.
>
> 4. As far as ability to use good judgment and respond appropriately to changes in the work place, moderate impairment due to making very poor decisions when manic.
>
> 5. As far as ability to handle funds, she can manage relatively well, but is in danger of going on spending sprees when she is manic.

AR 391. Poppe argues that Dr. Conditt's observations during his evaluation constitute "signs" that are considered objective medical evidence under the social security regulations. *See* Doc. No. 19 at 3 (citing 20 C.F.R. § 404.1502(g) and *Hines v. Colvin*, No. C15-2004-LTS, 2016 WL 538469, at *6 (N.D. Iowa Feb. 9, 2016)). The regulations define "signs" as follows:

> Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.

20 C.F.R. §§ 404.1502(g), 416.928(b).[3] Based on this regulation, Poppe argues that Dr. Conditt's observations constitute objective evidence and therefore, it was error for the ALJ to have discounted his opinions by finding they were based on Poppe's subjective complaints, which the ALJ determined were not entirely credible.

Judge Mahoney noted that Dr. Conditt found Poppe to be severely limited in her ability to interact with others "due to being suspicious of others and blurting out things," and moderately limited in her ability to exercise workplace judgment "due to making very poor decisions when manic." Doc. No. 18 at 13. Poppe does not dispute that Dr. Conditt relied on her subjective statements that she spent money inappropriately when manic, that she was easily distracted, that she had difficulties interacting with others and that she had difficulties completing tasks she started. *See* Doc. No. 18 at 13 (citing Doc. No. 14 at 6-7; AR 527-29). Judge Mahoney acknowledged that Dr. Conditt evaluated Poppe's memory and concentration through objective testing, but also relied on Poppe's subjective statements regarding her ability to concentrate, noting that it was based on her statements of being impulsive and unable to finish tasks. Therefore, Judge Mahoney concluded that all of the limitations identified by Dr. Conditt relied, at least in part, on Poppe's subjective statements and that it was appropriate for the ALJ to give "partial

---

[3] As Judge Mahoney noted in her R&R, the Social Security Administration promulgated new rules for evaluating medical evidence effective March 27, 2017. 82 Fed. Reg. at 5844. The rules cited here are substantively the same, but all citations throughout this opinion are to the old rules.

11

weight" to Dr. Conditt's opinions because he did not find Poppe to be entirely credible. *See* Doc. No. 18 at 13-14.

Poppe primarily relies on *Mrdalj v. Colvin*, No. C15-2009, 2015 WL 7871031, at *7 (N.D. Iowa Dec. 3, 2015) to argue that Judge Mahoney erred by failing to acknowledge that Dr. Conditt's report was based on "signs" constituting objective medical evidence. Judge Mahoney distinguished *Mrdalj* by stating that the psychological consultative examiner in that case based her RFC opinion on multiple objective tests she administered. *See* Doc. No. 18 at 14, n.11. Indeed, the consultative examiner in *Mrdalj* administered the Beck Depression Inventory-II test as well as other objective tests related to anxiety and intellectual functioning. *See Mrdalj*, 2015 WL 7871031, at *4. Poppe acknowledges that Dr. Conditt's evaluation does not include formalized tests, but argues it did include some objective evidence based on Dr. Conditt's observations. She asserts it was error for the ALJ to discount his opinion for being primarily based on Poppe's subjective reports.

I disagree. Dr. Conditt's report acknowledged that "other pertinent information" should be considered with regard to his findings. AR 389. This would include Poppe's credibility. There is no dispute that Dr. Conditt's evaluation consists of both "signs" and "symptoms."[4] The ALJ gave Dr. Conditt's opinion "partial weight" and only discounted the severity of the opined limitations because they appeared to be "*primarily* based on the claimant's subjective reports." AR 16 (emphasis added). In other words, the ALJ did not reject the opinion in its entirety for being based on subjective complaints or fail to acknowledge that there was some objective support for the limitations. Indeed, the ALJ incorporated many of Dr. Conditt's limitations into the RFC, just not to the same extent alleged by Poppe and opined by Dr. Conditt. Giving "partial weight" to Dr. Conditt's opinion because it was "primarily based on the claimant's subjective reports" is supported

---

[4] Symptoms refer to the claimant's "own description of [his or her] physical or mental impairment." 20 C.F.R. §§ 404.1502(i), 416.928(a).

by the record and is not error in light of the ALJ's finding as to Poppe's credibility, which is also supported by substantial evidence in the record as a whole.

### 4. *Medical Evidence in Support of RFC*

Poppe argues that work-related limitations from a treating or examining source are ordinarily required and that Judge Mahoney failed to explain why this case is the exception. *See* Doc. No. 19 at 4-5 (citing *Fitzgerald Morris v. Colvin*, No. C14-4068-LTS, 2016 WL 3360506, at *10 (N.D. Iowa June 16, 2016)). I find that Judge Mahoney provided a thorough and detailed explanation of why there is sufficient medical evidence in support of the RFC. As she noted, the record contains opinion evidence from a consulting psychological examiner and a treating psychiatric source, making this case distinguishable from *Nevland*, 204 F.3d at 858, in which the record contained opinions only from non-examining state agency consultants. *See* Doc. No. 18 at 15. *Fitzgerald Morris* is distinguishable for the same reason. In that case, the record contained treatment notes and other records reflecting that the claimant received care for his impairments. *Fitzgerald Morris*, 2016 WL 3360506, at *10. However, those records were silent as to how the claimant's impairments affected his ability to function in the workplace. *Id*.

*Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion." *Hattig v. Colvin,* No. C12–4092 MWB, 2013 WL 6511866, at *10 (N.D. Iowa Dec. 12, 2013). Even without an opinion from a treating or examining source, the ALJ's decision may be affirmed if there is other medical evidence demonstrating the claimant's ability to function in the workplace. *Id.; see also Agan v. Astrue,* 922 F.Supp.2d 730, 756 (N.D. Iowa 2013). The question is whether there is sufficient evidence of "how [the claimant's] impairments … affect [her] residual functional capacity to do other work," or her "ability to function in the workplace." *Hattig,* 2013 WL 6511866, at *11 (quoting *Nevland,* 204 F.3d at 858).

I agree with Judge Mahoney that this case does not present a *Nevland* issue because there are treating and examining source opinions in the record. These opinions explicitly discuss Poppe's abilities to function in the workplace. There is no requirement that the ALJ's RFC determination be supported by an identical opinion from a treating or examining source. I find no error with regard to Judge Mahoney's analysis of the medical evidence in support of the ALJ's RFC determination.

## V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff Angela S. Poppe's objections (Doc. No. 19) to the Report and Recommendation are **overruled**;
2. I **accept** United States Magistrate Judge Kelly K.E. Mahoney's July 12, 2017, Report and Recommendation (Doc. No. 18) without modification. *See* 28 U.S.C. § 636(b)(1).
3. Pursuant to Judge Mahoney's recommendation:
    a. The Commissioner's determination that Poppe was not disabled is **affirmed**; and
    b. Judgment shall enter against Poppe and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 18th day of August, 2017.

_____
Leonard T. Strand, Chief Judge